[Civ. No. 24631.   First Dist., Div. One.   June 25, 1968.]

RALPH ISAACSON, Plaintiff and Respondent, v. CITY OF OAKLAND et al., Defendants and Appellants.

[Civ. No. 24861.   First Dist., Div. One.   June 25, 1968.]

RALPH ISAACSON, Plaintiff and Appellant, v. CITY OF OAKLAND et al., Defendants and Respondents.

Neyhart & Grodin and Howard H. Jewel for Plaintiff and Appellant and Plaintiff and Respondent.

Edward A. Goggin, City Attorney, and William C. Sharp, Deputy City Attorney, for Defendants and Appellants and Defendants and Respondents.

ELKINGTON, J.—The parties before us have cross-appealed from a judgment in a negligence action following a court trial, awarding plaintiff Ralph Isaacson $8,933.72. Plaintiff insists that the judgment is inadequate as a matter of law. Defendants City of Oakland and Charles B. Thomas contend that the action was barred by the statute of limitations.

On January 30, 1964, defendant Thomas, during the course of his employment as a policeman by the City of Oakland, drove an automobile into the rear end of a pick-up truck operated by plaintiff, who suffered physical injury and property damage as a result.

On May 7, 1964, plaintiff's attorney filed a timely written claim for damages with the City of Oakland. Negotiations for the settlement of the claim were started. Medical reports and proof of special damages were furnished to defendants. Offers and counteroffers were exchanged. The negotiations continued at least until November 17, 1964. On that day a communication from plaintiff's attorney to defendants stated that "it looks as if we will have to file suit."[1] However, without success the parties continued talking settlement until some time in January 1965.

Plaintiff's attorney testified: "I had, however, put a notation in my file under the date of January 30 to file the action in Isaacson versus City of Oakland, and when I saw on my calendar that that date was approaching, I felt I should file the lawsuit, and I was under the impression at that time that the statute of limitations was one year from the date of the accident." The complaint was filed on January 26, 1965.

In 1963 the Legislature enacted the so-called California Tort Claims Act. (Stats. 1963, ch. 1715, pp. 3369-3424— hereinafter called the "Act") relating to claims against

---

[1]The trial court found on what we consider substantial evidence that negotiations were ended on or about November 17, 1964.

governmental entities. Among other things the Act established Government Code sections 900-978.8.[2]

As applicable here the Act provided for the filing of a claim "not later than the 100th day after the accrual of the cause of action." (Gov. Code, § 911.2.) We set forth the provisions of certain other Government Code sections which are relevant to the case at bench. Section 910.6: "(a) A claim may be amended at any time before the expiration of the period designated in Section 911.2 or before final action thereon is taken by the board, whichever is later, if the claim as amended relates to the same transaction or occurrence which gave rise to the original claim. The amendment shall be considered a part of the original claim for all purposes. . . ."

Section 912.4: "The board shall act on a claim in the manner provided in Section 912.6 or 912.8 within 45 days after the claim has been presented. If a claim is amended, the board shall act on the amended claim within 45 days after the amended claim is presented. The claimant and the board may extend the period within which the board is required to act on the claim by written agreement made before or after the expiration of such period. If the board fails or refuses to act on a claim within the time prescribed by this section, the claim shall be deemed to have been rejected by the board on the last day of the period within which the board was required to act upon the claim. If the period within which the board is required to act is extended by agreement, whether made before or after the expiration of such period, the last day of the period within which the board is required to act shall be the last day of the period specified in such agreement."

Section 912.6: "(a) In the case of claim against a local public entity, the board may act on a claim in one of the following ways: (1) If the board finds the claim is not a proper charge against the public entity, it shall reject the claim. (2) If the board finds the claim is a proper charge against the public entity and is for an amount justly due, it shall allow the claim. (3) If the board finds the claim is a proper charge against the public entity but is for an amount greater than is justly due, it shall either reject the claim or allow it in the amount justly due and reject it as to the balance. (4) *If legal liability of the public entity or the*

---

[2]We are concerned here with the Act and Government Code sections as they were enacted in 1963. They have since been amended.

*amount justly due is disputed, the board* may reject the claim or may *compromise the claim.*'' (Italics added.)

Section 945.4: ''No suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board, . . .''

Section 945.6: ''[A]ny suit brought against a public entity on a cause of action for which a claim is required to be presented . . . must be commenced within six months after the date the claim is acted upon by the board, or is deemed to have been rejected by the board, . . .''

The board (defined by the Act as the governing body of the local public entity) admittedly did not act on plaintiff's claim by express rejection (§ 912.6, subd. (a)(1)), or by allowance (§ 912.6, subd. (a) (2)), or by allowance in part (§ 912.6, subd. (a)(3)).

At the trial defendants contended, as they do on this appeal, that plaintiff's claim was rejected by operation of section 912.4 on the failure of the board to act upon it within 45 days of its filing. It follows, they say, that the section 945.6 statute of limitations commenced running on June 20, 1964, and that plaintiff's cause of action was barred six months later on December 20, 1964.[3]

Plaintiff's contentions at the trial were (1) that the board's time for acting was extended, as provided by section 912.4, when plaintiff filed an amended claim, (2) that defendants were estopped to assert the statute of limitations and (3) that defendants had waived the benefit of the statute.

The trial court found against plaintiff on each of his stated contentions. As these findings appear to be supported by substantial evidence we must accept them. (See *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805].)

Plaintiff's contention of an amended claim rests upon a September 30, 1964, letter sent by plaintiff's attorney to defendants. The letter contained a revised statement of medical expenses and wage loss and concluded: ''[I]n the interest of disposing of the case without filing suit, I would recommend a settlement at this time of $4,500.00.'' The court cor-

---

[3]Government Code section 950.2 barred the action against defendant Thomas if the statute of limitations had run against his employer, City of Oakland.

rectly determined this communication to be a continuation of negotiations on the previously filed claim. Moreover, considered as an amended claim its filing was not timely. Under section 910.6 such an amended claim must be filed within the original 100-day period or before the board took final action on the original claim, whichever is later. (See *Tubbs* v. *Southern Cal. Rapid Transit Dist.*, 67 Cal.2d 671, 677-678 [63 Cal.Rptr. 377, 433 P.2d 169]; *Rogers* v. *Board of Education*, 261 Cal.App.2d 355, 358 [67 Cal.Rptr. 905].) Here such final action was taken by operation of section 912.4 on the last day of the 45-day period. That day was June 20, 1964. The 100-day period had expired on May 9, 1964.

As to plaintiff's claim of estoppel, a necessary element of that principle does not appear. "There can be no estoppel unless the party asserting it relied to his detriment on the conduct of the party sought to be estopped." (*Rheem Mfg. Co.* v. *United States*, 57 Cal.2d 621, 626 [21 Cal.Rptr. 802, 371 P.2d 578].) Plaintiff did not withhold filing of his action because of a reliance upon conduct of defendants. As determined by the court, it was because he, as well as defendants, were under the impression that the pertinent statute of limitations was one year.[4] Plaintiff relied upon a calendar notation that January 30, 1965, was the last day for filing suit. There can be no estoppel where an essential element is missing. (See *Rogers* v. *Board of Education*, *supra*, 261 Cal.App.2d 355, 360-361; *Johnson* v. *Johnson*, 179 Cal.App.2d 326, 330 [3 Cal.Rptr. 575].) And the existence of an estoppel is a question of fact for the trial court. (*General Motors Accept. Corp.* v. *Gandy*, 200 Cal. 284, 295 [253 P. 137].)

As previously indicated the trial court found no waiver of the statute of limitations by defendants. Waiver is usually regarded as a question of fact to be determined by the trial court. (*Posner* v. *Grunwald-Marx, Inc.*, 56 Cal.2d 169, 189 [14 Cal.Rptr. 297, 363 P.2d 313].) It consists of the voluntary relinquishment of a known right. A waiver of the statute of limitations cannot be established without a clear showing of an intent to relinquish that right, and doubtful cases will be resolved against waiver. (*Church* v. *Public Utilities Co.*, 51 Cal.2d 399, 401 [333 P.2d 321].) Here the evidence adequately supports the court's finding.

[4]At oral argument on this appeal plaintiff conceded that the evidence disclosed no bad faith or intentional misleading on the part of defendants.

However, the court did nevertheless rule in plaintiff's favor on the issue of the statute of limitations. It concluded (and plaintiff here contends), that the board did *act* pursuant to section 912.6, subdivision (a)(4), by *compromising* the claim. The reasoning is that since negotiation is necessary to a compromise, by negotiating plaintiff's claim the City of Oakland acted upon it by compromise. Since the negotiations were ended on November 17, 1964, the court concluded that the claim must be deemed rejected as of that date, thus making the filing of plaintiff's action timely.

We have concluded that the Act cannot properly be construed as equating *negotiation* with *compromise*. We hold that in the absence of a written agreement extending the time to act on a claim or an amended claim (§ 912.4), the period of the statute of limitations (§ 945.6) commences not later than 45 days after the filing of the claim. It follows that plaintiff's action is barred.

We are aided in our interpretation of the Act by the January 1963 "Recommendations Relating to Sovereign Immunity: Number 2—Claims, Actions and Judgments Against Public Entities and Public Employees" of the California Law Revision Commission. This commission had been authorized by the Legislature to make a study and report relating to the doctrine of sovereign immunity. (See Stats. 1957, Resolution No. 22, ch. 202, p. 4589.) Its report to the Legislature resulted in the enactment of the Act, apparently without change.

The commission's report (p. 1011) pointed out that an uncertainty had existed as to whether local public entities could compromise a claim prior to the filing of an action thereon. It urged that such entities be given express authority to compromise such claims by the adoption of section 912.6, subdivision (a)(4) which allowed a local public entity's board to *act* on a claim by compromising it.

While recommending that 45 days be allowed for acting upon a claim the commission considered the desirability of allowing the parties sufficient time to negotiate a settlement. It stated (p. 1011) that at the end of the 45-day period the "claim should be deemed to have been rejected if it has not been acted upon by the public entity. *The parties should have the power, though, to extend this period by written agreement.* Moreover, if a claimant amends his claim, the entity should have another 45 days to act upon the claim. *These provisions will provide the parties with a flexible time limit*

*within which to negotiate or settle claims,* yet the claimant will not be unduly delayed in the commencement of his action if litigation becomes necessary." (Italics added.) It is clear the commission intended that the running of the statute of limitations commence not later than 45 days after the filing of a claim or amended claim unless the parties agreed in writing upon an extended period of time for action on the claim. It did not intend that the statute of limitations be tolled without written agreement so long as negotiations continue. It is reasonable to assume that the Legislature, adopting the proposed Act, concurred with the construction given it by the commission.

■ "Reports of commissions which have proposed statutes that are subsequently adopted are entitled to substantial weight in construing the statutes. [Citations.] This is particularly true where the statute proposed by the commission is adopted by the Legislature without any change whatsoever and where the commission's comment is brief, because in such a situation there is ordinarily strong reason to believe that the legislator's votes were based in large measure upon the explanation of the commission proposing the bill." (*Van Arsdale* v. *Hollinger,* 68 Cal.2d 245, 250 [66 Cal.Rptr. 20, 437 P.2d 508].)

■ The commission's construction is consistent with the ordinary and accepted meaning of the word "compromise."

■ *Kelly* v. *Steinberg,* 148 Cal.App.2d 211, 219 [306 P.2d 955], states: "A compromise is a settlement of differences by mutual concessions; an adjustment of conflicting claims." Its common meaning does not include discussions or negotiations leading up to the agreement. ■ When the meaning of a word of a statute has been interpreted by the courts there is some indication that the use of the word in a subsequent statute carries with it a like construction. (*Perry* v. *Jordan,* 34 Cal.2d 87, 93 [207 P.2d 47].)

In the recent case of *Rogers* v. *Board of Education, supra,* 261 Cal.App.2d 355, 360, it was held that investigation of a claim, requesting information as to medical and other expenses and setting up a medical examination does not constitute action on a claim as provided by section 912.6.

■ Plaintiff earnestly insists that we should follow the rule of liberal construction announced in *Viles* v. *State of California,* 66 Cal.2d 24 [56 Cal.Rptr. 666, 423 P.2d 818], and *Satterfield* v. *Garmire,* 65 Cal.2d 638 [56 Cal.Rptr. 102, 422 P.2d 990], in order that he might recover on the merits of his

case. He urges that we accept the trial court's rationale or that we find as a matter of law that waiver or estoppel existed.

We are mindful of the principle stated by *Viles* that the 1963 Act should be liberally construed. But we are also reminded by *Viles* that the Act resulted from a recognition of both the courts and the Legislature that the " 'labyrinth of claims statutes previously scattered throughout our statutes were traps for the unwary. [Citations.] An attempt has been made by the Legislature to remove such snares. Courts should not rebuild them.' " (P. 31.) Today settlements of most claims and lawsuits are negotiated over the telephone by attorneys or orally between claimant and adjuster. Under the construction of the Act argued for by plaintiff the important question of the running of the statute of limitations would too often depend upon oral testimony and fallible human recollection of dates and conversations. Such a practice could be expected to undo much of the certainty and stability brought about by the Act.

Our decision on the appeal of defendants makes plaintiff's appeal moot. It is therefore dismissed.

The judgment is reversed. The superior court will, on appropriate findings, enter judgment for defendants. Defendants will recover their costs on each appeal.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied July 15, 1968, and the petition of plaintiff for a hearing by the Supreme Court was denied August 21, 1968. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.